# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 6:20-CR-00047-01** |
| **VERSUS** | **JUDGE JUNEAU** |
| **OLIVER J MARTIN (01)** | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion to Suppress. (Rec. Doc. 22). The Government opposed the Motion (Rec. Doc. 30). Defendant did not reply. The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that Defendant's Motion be DENIED.

## Factual Background

Following an investigation which began in November 2018, Defendant was indicted on five counts of possession with intent to distribute controlled substances (Counts 1, 2, 3, 6, and 7), possession of a firearm in the furtherance of a drug trafficking crime (Count 4), and two counts of possession of a firearm by a prohibited person (Count 5 and 8). (Rec. Doc. 1). He appeared and was arraigned on March 5, 2020 (Rec. Doc. 13) and was detained pending trial (Rec. Doc. 15).

Defendant was arrested pursuant to a warrant issued on October 4, 2019 by Louisiana 15th Judicial District Judge Laurie Hulin. (Rec. Doc. 30-1). In support of the search warrant, Trevor Picard, with the Lafayette Parish Sheriff's Office (LPSO), submitted an affidavit in which he sought authorization to search Defendant's residence. In the affidavit, Picard provided descriptive details of the residence (white vinyl siding home with grey metal roof, wooden porch, and three windows facing the road) and set forth the following facts in support of probable cause:

- In November 2018 the LPSO Narcotics Unit began investigating Defendant. Agents learned that he was a large scale narcotics dealer and that he had been arrested numerous times for illegal narcotics. Multiple people provided information indicating they had seen Defendant with ice chests full of suspected methamphetamine and hundreds of thousands of dollars.

- During surveillance on October 4, 2019, agents observed a vehicle which did not belong to Defendant leave his residence. Upon stopping the vehicle for a traffic violation, the agents located 1.35g of heroin/fentanyl. In a subsequent interview of the vehicle's occupants, the agents learned they had obtained the heroin from Defendant.

- At some unspecified point, the agents observed Defendant leave the residence and meet a vehicle in the Lowes parking lot, "where they observed what they know to be consistent with a hand to hand transaction."

(Rec. Doc. 30-1, p. 1-2).

Agent Picard presented the affidavit and request for a "no knock" search warrant on October 4, 2019 at 10:30 p.m. through the CloudGavel program. (Rec. Doc. 30-4. See also Rec. Doc. 30-1, p. 3). Judge Hulin electronically signed the warrant the same day, 45 minutes later at 11:15 p.m. (*Id.*)

A week later, on October 11, 2019, Agent Picard submitted a request for a second search warrant of Defendant's residence. Therein, Agent Picard attested that LPSO agents conducted a search on October 5, 2019 pursuant to the October 4, 2019 warrant. The October 5 search revealed the following: approximately 317g (including packaging) of Heroin/Fentanyl, approximately 446g (including packaging) of Methamphetamine, approximately 955g (including packaging) of Cocaine, approximately 2,925g (including packaging) of Marijuana, 5 Methylenedioxymethamphetamine tablets, 70 whole and several partial Sucralfate pills, approximately 970g (including packaging) of an unknown brown colored powder, 2 pints of Promethazine, $253,826 in cash, a large amount of rolled coins, and a 5 gallon jug of loose coins, a money counting machine, a coin wrapping machine, and four firearms (two in the kitchen, one in the laundry room, and one in the living room; two with obliterated serial numbers).

Agent Picard's October 11, 2019 affidavit further attests that following the October 5 search, agents arrested Defendant after a short pursuit in which Defendant

3

crashed his vehicle, also revealing a large amount of narcotics. Subsequently, two confidential, unrelated sources explained separately that Defendant likely had more money and narcotics hidden in his home. Agents had observed the areas, which were distinctly described by the informants. (Rec. Doc. 30-5). According to the watermark on the affidavit, Agent Picard submitted the affidavit on October 11, 2019 at 9:06 p.m., and Judge David Smith with the 15th Judicial District signed the warrant that day at 9:34 p.m. (Rec. Doc. 30-5, p. 5-6).

According to Casey Roussel, CloudGavel's Chief Customer Officer (CCO), CloudGavel is a web-based electronic warrant system which provided electronic warrant processing to the 15th Judicial District Court and LPSO at the time in question. (Rec. Doc. 30-6, ¶2-3). Mr. Roussel declared that CloudGavel has maintained security procedures in compliance with the Criminal Justice Information Services' (CJIS) Security Policy and that its application is hosted in Amazon Web Services for GovCloud, a secure cloud platform. (Rec. Doc. 30-6, ¶4-5). CloudGavel's system and security protocols have withstood an internal review process and penetration testing by the Florida Department of Law Enforcement and another third-party vendor to ensure compliance with CJIS Security Policy. (Rec. Doc. 30-6, ¶5). Mr. Roussel's affidavit sets forth details pertaining to its security measures, including password encryption, separation of database and file systems among programming teams, and closely monitored transaction logs, warrant

4

submissions, and judicial review and approval of submissions. (Rec. Doc. 30-6, ¶6-8). CloudGavel allows authorized law enforcement officers and judicial officers to electronically sign warrants, as evidenced by a watermark date and time stamp. (Rec. Doc. 30-6, ¶9). This, in conjunction with a warrant audit trail maintained on CloudGavel servers, allows for independent authenticity verification of the digital documents and signatures. (Rec. Doc. 30-6, ¶10).

Defendant challenges the sufficiency of the October 4, 2019 affidavit as conclusory and without specific facts. Defendant also challenges the electronically-signed affidavit and warrant as constitutionally inadequate under both F.R.Cr.P. Rule 41(d) and La. R.S. 9:2603.1. Defendant did not challenge the October 11, 2019 warrant.

## **Law and Analysis**

Defendant's Motion to Suppress invokes the exclusionary rule, as it seeks to preclude the Government from introducing at trial certain evidence, specifically the items (narcotics, currency, and firearms) discovered in the October 5, 2019 search of his home pursuant to the October 4, 2019 warrant. "The exclusionary rule was created by the Supreme Court to 'supplement the bare text' of the Fourth Amendment, which 'protects the right to be free from 'unreasonable searches and seizures,' but ... is silent about how this right is to be enforced.'" *United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir.), *cert. denied,* 140 S. Ct. 276 (2019), citing

*Davis v. United States*, 564 U.S. 229, 231 (2011). The exclusionary rule operates to exclude the prosecution from introducing evidence obtained unconstitutionally. *Id*. Its purpose is to deter officer misconduct, not to redress injury to the victim of a constitutional violation or to address judicial errors or misconduct. *Id*., citing *Davis v. United States*, 564 U.S. 229, 236-37 (2011), and *United States v. Leon*, 468 U.S. 897, 916 (1984).

Generally, "the defendant has the burden of proving, by a preponderance of the evidence, that the material in question was seized in violation of his constitutional rights." *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).

I. Constitutionality of the Search Warrant.

Search warrants must be based on probable cause. "The information necessary to show probable cause must be contained within a written affidavit given under oath." *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007), citing *United States v. Brown,* 941 F.2d 1300, 1302 (5th Cir.1991). "Probable cause does not require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id*.

The Supreme Court has recognized a good faith exception to the exclusionary rule, which allows admission at trial of "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate" but later invalidated. *Id*. citing *Leon*. The Fifth Circuit applies a two-part test to

6

determine if the exclusionary rule applies to exclude evidence seized pursuant to a warrant: The court must first determine whether the good faith exception applies. If so, the court need not inquire "whether probable cause existed unless the case presents a 'novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates.'" *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006), quoting *United States v. Laury,* 985 F.2d 1293, 1311 (5th Cir.1993); *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018).

The Fifth Circuit has identified four situations in which the good faith exception does not apply:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false;
> (2) when the issuing magistrate wholly abandoned his judicial role;
> (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable;
> (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*Id*., quoting *United States v. Woerner*, 709 F.3d 527, 533–34 (5th Cir. 2013).

Defendant argues the October 4, 2019 affidavit is invalid, because "it provided no reliable and specific facts to support the conclusion that specific evidence of a crime would be found in the home that day." (Rec. Doc. 22, p. 4). Valid warrants are often contrasted to those supported by mere "bare bones" affidavits, which "contain

7

wholly conclusory statements, [and] lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Massi*, 761 F.3d 512, 530 (5th Cir. 2014), citing *United States v. Satterwhite,* 980 F.2d 317, 321 (5th Cir.1992)."When a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *Id*.

"An affidavit may rely on hearsay—information not within the personal knowledge of the affiant, such as an informant's report—as long as the affidavit presents a 'substantial basis for crediting the hearsay.'" *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). In determining the reliability of a confidential informant, the court must consider the totality of circumstances, including the informant's veracity, credibility, and basis of knowledge. *Illinois v. Gates,* 462 U.S. 213, 230 (1983). The court is to apply a two-prong test of veracity and basis of knowledge. *Id*. "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. *United States v. Laury*, 985 F.2d 1293, 1312 (5th Cir. 1993), citing *Gates,* 462 U.S. at 230-33. "The veracity of an informant is often assessed from the accuracy of previous tips." *Laury*, 985 F.2d at 1312. "An informant's basis of knowledge can ... be established by a particularly detailed tip." *Id*. at 1313 citing *United States v. Jackson,* 818 F.2d 345, 349 (5th Cir.1987). Corroboration by the investigating officers may also support the informant's reliability.

> The law of this circuit is that there is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible. Rather, whether subsequent corroboration is necessary must be determined in the light of the totality of the circumstances presented by the particular set of facts.

*United States v. Rojas Alvarez*, 451 F.3d 320, 332–33 (5th Cir. 2006). (internal citations and quotations omitted).

A tipster's information which corroborates "prior information and continuing suspicions of authorities," as opposed to the case in which the tip was the first piece of information leading to the suspect, need not necessarily be corroborated by subsequent investigation. *Id*. Importantly, the court should not judge the "bits and pieces of information in isolation." *Massachusetts v. Upton*, 466 U.S. 727, 732 (1984). Where "no single piece of evidence is conclusive[, b]ut the pieces fit neatly together," the court should find the issuing court was justified in its determination "that there was 'a fair probability that contraband or evidence of a crime' would be found." *Id*.

The Court finds that Agent Picard's affidavit is not "bare bones." The affidavit was based upon information from several people as well as personal observations of investigating agents, which neatly fit together to support the issuing judge's finding of probable cause. Multiple people provided the same information: that Defendant had been seen with "ice chests full of suspected Methamphetamine and hundreds of thousands of dollars." Although the affidavit does not provide any information supporting the reliability of any particular person, the fact that several people

provided the same, detailed information supports the Court's finding. In addition, the occupants of the vehicle which agents observed leaving Defendant's residence all told the agents that Defendant had given them the heroin discovered in their vehicle. Finally, the agents observed Defendant travel to the Lowe's parking lot and engage in a meeting which they knew to be consistent with a hand to hand transaction of narcotics. (Rec. Doc. 30-1, p. 1-2). Thus, the agents were justified in relying on the search warrant, and the good faith exception applies. Further, because this case presents no novel issues of law, the Court need not consider the issue of probable cause.

To the extent Defendant contends the information contained in the affidavit is stale, because Agent Picard attested that the investigation began in November 2018 (see Rec. Doc. 22, p. 2, ¶4), the Court disagrees. "[T]he amount of delay which will make information stale depends upon the particular facts of each case, including the nature of the criminal activity and the type of evidence sought." *Laury*, 985 F.2d at 1314, citing *United States v. Freeman,* 685 F.2d 942, 951 (5th Cir.1982). "'A mechanical count of days is of little assistance in [the] determination.'" *Id.*

Agent Picard did not rely on stale information. Although the investigation began in November 2018, the affidavit affirms that the investigation had been ongoing since that time. Further, Agent Picard attested to recent events in support of his request, such as the arrest of individuals who advised agents they had obtained

heroin from Defendant on the same date as the issuance of the warrant. Hence, Defendant's argument that the information was stale is unavailing.

    II.    <u>Sufficiency of Electronic Warrant</u>

Defendant next challenges the electronic warrant as constitutionally insufficient. The October 4, 2019 warrant was requested and issued electronically by a state court judge. La. R.S. 9:2603.1 provides:

- A. An application for any warrant or signature utilized by the judicial branch of state government shall not be denied legal effect or enforceability solely because it is in electronic form. Any such application, signature or record in electronic form shall have the full effect of law.

- B. If a law requires the application for any warrant to be in writing, an electronic record shall satisfy the law.

- C. If a law requires a signature, an electronic signature satisfies the law.

- D. Any application used to attach a digital signature to any warrant or affidavit must have security procedures in place that insure the authenticity of the digital signature. The application must also be able to keep an electronic record of the warrant or affidavit, including the time and date of when the signature was attached. The application must also include encryption measures to ensure secure access of the application.

- E. Unless otherwise agreed to by a sender of a warrant application and the judiciary, an electronic record is received when:

- (1) The record enters an information-processing system that the local court rules have designated and approved for the purpose of receiving electronic applications for warrants and from which the recipient is able to retrieve the electronic record.

- (2) It is in a form capable of being processed by the system.

> F. In any instance where an affidavit is submitted to a judge or magistrate electronically, the electronic signature of the affiant shall satisfy the constitutional requirement that the testimony of the affiant be made under oath, provided that such signature is made under penalty of perjury and in compliance with Subsection D of this Section. If the requirements of Subsection D of this Section are met, it shall not be necessary for the oath to be made orally for the affidavit to have legal effect.

The Court finds that the October 4, 2019 warrant complies with the foregoing statute. As affirmed by the CloudGavel CCO, Mr. Roussel, the electronic warrant program complies with the CJIS Security Policy and employs multiple, tested and verified security protocols, including password encryption, separation of database and file systems among programming teams, closely monitored transaction logs and warrant submissions, judicial review and approval of submissions, and a digital trail sufficient to authenticate digital documents and signatures. (Rec. Doc. 30-6). The Government submitted evidence of the digital trail for the October 4, 2019 warrant evidencing Agent Picard's submission of the request at 10:30 p.m. and Judge Hulin's signature at 11:15 p.m. Absent any countervailing evidence from Defendant, the Court finds that the warrant was validly issued electronically.

Defendant also challenges the warrant under F.R.Cr.P. Rule 41(d)(3), which provides that a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means in accordance with the procedures set forth in F.R.Cr.P. Rule 4.1. However, Rule 41 only applies to warrants issued "upon the request of a federal law enforcement officer or an attorney

for the government." *United States v. McKeever*, 905 F.2d 829, 833 (5th Cir. 1990). It does not apply to the request of a state officer from a state court based on a probable cause showing of violation of a state law. *Id.* at 832. Agent Picard's affidavit indicates the requested warrant was sought by the Lafayette Parish Sheriff's Office from the 15th Judicial District Court in the State of Louisiana for a violation of a state statute, La. R.S. 40:966. (Rec. Doc. 30-1). Hence, F.R.Cr.P. Rule 41 does not apply.

   III.   Whether an Evidentiary Hearing is Necessary

The Court finds that Defendant is not entitled to an evidentiary hearing.

> Under Rule 41(e), an evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact. Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief. Factual allegations set forth in the defendant's motion, including any accompanying affidavits, must be "'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.'" General or conclusionary assertions, founded upon mere suspicion or conjecture, will not suffice.
>
> *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (citations omitted).

Further, when the defendant challenges the validity of a warrant affidavit, he is entitled to an evidentiary hearing only upon showing that (1) the allegations in the supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause. *United States v. Brown*, 298 F.3d 392, 395–96 (5th Cir.

13

2002), citing *United States v. Dickey,* 102 F.3d 157, 161–62 (5th Cir.1996). "The second prong of the test, however, is often determinative: 'Even if the defendant makes a showing of deliberate falsity or reckless disregard for the truth by law enforcement officers, he is not entitled to a hearing if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Id*. quoting *Dickey* 102 F.3d at 161–62.

Defendant challenges the sufficiency of the affidavit submitted with the request for search warrant. Defendant has raised no issues of fact regarding the information set forth in the affidavit or that the attested facts were deliberately false or made in reckless disregard. Neither has Defendant presented any evidence in response to Mr. Roussel's declaration regarding CloudGavel's compliance with La. R.S. 9:2603.1. Accordingly, the Court finds that Defendant is not entitled to an evidentiary hearing.

## Conclusion

For the reasons discussed herein, it is recommended that Defendant's Motion to Suppress (Rec. Doc. 22) be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Crim. P. 59(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of

Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Crim. P. 59(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 6th day of July, 2020.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE