UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.  6:20-CR-00047-01** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **OLIVER J MARTIN (01)** | **MAGISTRATE JUDGE DAVID J. AYO** |

### MEMORANDUM RULING AND ORDER

The present matter before the Court is a Motion to Dismiss filed by the defendant, Oliver Martin [ECF No. 119]. Martin requests that the Court dismiss Counts 5 and 8 of the Indictment [ECF No. 1], which charge Martin with possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Martin mounts a facial and "as applied" challenge to section 922(g)(1), arguing that the statute is unconstitutional under *New York State Rifle & Pistol Association, Inc. v. Bruen* ("*Bruen*").[1] The United States opposes the Motion [ECF No. 120]. After reviewing the parties' briefs and the relevant authorities, the Court **DENIES** the Motion to Dismiss.

### I.
### BACKGROUND

Deputies with the Lafayette Parish Sheriff's Office executed search warrants at Martin's residence in connection with an investigation into narcotics trafficking in Lafayette, Louisiana.[2] The government contends that the deputies discovered and seized "distribution amounts of methamphetamine, cocaine, and fentanyl."[3] The government contends that the deputies also seized four firearms at the time the first warrant was executed, and an additional firearm when a second

---

[1] 597 U.S. 1 (2022).
[2] ECF No. 119 at 2.
[3] ECF No. 120 at 2-3.

1

warrant was executed.[4] An arrest warrant for Martin was then issued and, according to the government, when officers attempted to execute the arrest warrant, Martin fled in his vehicle, "eventually losing control and crashing his vehicle into an electricity pole and overturning the vehicle."[5]

On February 19, 2020, a federal grand jury returned an eight-count indictment charging Martin with five counts of possession with intent to distribute controlled substances (21 U.S.C. § 841(a)(1)), one count of possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)), and two counts of possession of a firearm by a prohibited person (18 U.S.C. § 922(g)(1)).[6] The government contends that Martin had been convicted of crimes punishable by imprisonment for a term exceeding one year, and that he knowingly possessed a firearm and ammunition.[7] Specifically, the government contends that, in 2004, Martin was convicted in federal court of possession of a firearm by a prohibited person and received a sentence of 37 months of incarceration followed by 3 years of supervised release.

## II.
### DISCUSSION

**A. Section 922(g)(1) and the Case Law Prior to *Heller* and *Bruen*.**

The federal prohibition against convicted felons possessing firearms is contained in 18 U.S.C. § 922(g)(1), which provides that "[i]t shall be unlawful for any person … who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or

---

[4] *Id.*
[5] *Id.*
[6] ECF No. 1.
[7] *Id.*

transported in interstate or foreign commerce." This provision originated in Title VI of the Omnibus Crime Control and Safe Streets Act of 1968, which, according to its legislative history, was designed to "keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency, and to assist law enforcement authorities in the States and their subdivisions in combating the increasing prevalence of crime in the United States."[8] The Senate Report on the legislation emphasized that "[i]t is not the purpose of the title to place any undue or unnecessary restrictions or burdens on responsible, *law-abiding* citizens with respect to the acquisition, possession, transportation, or use of firearms appropriate to the purpose of hunting, trap shooting, target shooting, personal protection, or any other lawful activity."[9]

Prior to *Bruen*, the Fifth Circuit rejected multiple challenges to section 922(g)(1) under the Second Amendment. The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[10] In *United States v. Darrington*,[11] a defendant charged as a felon in possession argued that section 922(g)(1) violated his individual right to keep and bear arms under the Second Amendment. The Fifth Circuit rejected the defendant's argument, holding that "legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment."[12] The court affirmed this precedent in subsequent decisions, including decisions issued after the Supreme Court's decision in *District of Columbia v. Heller*.[13] For example, in *Powell*, the defendant argued

---

[8] S. Rep. No. 1097 at 2 (1968), as reprinted in 1968 U.S.C.C.A.N. 2112, 2113.
[9] *Id.* (emphasis added).
[10] U.S. CONST. amend. II.
[11] 351 F.3d 632, 633–34 (5th Cir. 2003).
[12] *Id.*
[13] 554 U.S. 570, 595 (2008); *see United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009) ("But *Heller* provides no basis for reconsidering *Darrington*. We therefore reaffirm *Darrington* and the constitutionality of § 922(g).") (citations omitted); *United States v. Powell*, 574 F. App'x 390, 397 (5th Cir. 2014). As discussed below, *Heller* is the

3

that "the Second Amendment protects the right of a convicted felon to keep a firearm if he has never been convicted of a firearm offense or of physical violence."[14] Citing *Darrington* and the Supreme Court's opinion in *Heller*, the Fifth Circuit rejected this argument as "precluded by our precedent," and held that the "Second Amendment does not preclude Powell's conviction of being a felon in possession of a firearm nor the sentence imposed pursuant to that conviction."[15]

### B. The Second Amendment Trilogy: *Heller*, *McDonald*, and *Bruen*.

In 2008, the Supreme Court decided *District of Columbia v. Heller,* the first of a trilogy of rulings interpreting the Second Amendment.[16] *Heller* held that the Second Amendment codified a pre-existing, individual right, belonging to "law-abiding, responsible citizens," that encompasses the possession of handguns in the home for self-defense.[17] Based upon this determination, the Supreme Court struck down a District of Columbia ordinance banning "handgun possession in the home" as unconstitutional.[18] Two years later in *McDonald v. City of Chicago*, the Supreme Court held that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*" against the States.[19] Following *Heller* and *McDonald*, eleven courts of appeal, including the Fifth Circuit, adopted a two-step framework for evaluating firearms regulations.[20] The first step of that framework required the government to justify a challenged law by showing that it "regulates activity falling outside the scope of the right as

---

first of the Supreme Court's recent decisions recasting the analysis of constitutional challenges under the Second Amendment.
[14] *Powell*, 574 F. App'x at 397.
[15] *Id.*
[16] 554 U.S. at 595.
[17] *Id.* at 635.
[18] *Id.*
[19] *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).
[20] *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives ("NRA")*, 700 F.3d 185, 194 (5th Cir. 2012)

originally understood," based upon its "historical meaning."[21] If the government was successful in demonstrating the regulated conduct fell beyond the Amendment's original scope, the analysis ended, as the regulated activity was categorically unprotected.[22] But if the historical evidence was inconclusive or suggested that the regulated activity was not categorically unprotected, the examination proceeded to step two.[23] At step two, courts analyzed whether the challenged law survived the appropriate level of means-end scrutiny.[24]

In *Bruen*, the Supreme Court held that the Second Amendment protects the right of "ordinary, law-abiding, adult citizens" to carry handguns for self-defense outside of the home.[25] Critically, *Bruen* abrogated the two-step inquiry adopted by the courts of appeal after *Heller*. Although *Bruen* found step one of the predominant framework to be "broadly consistent with *Heller*," it found that step two was "one step too many."[26] *Bruen* then "made the constitutional standard endorsed in *Heller* more explicit,"[27] and announced the following standard for evaluating modern firearms regulations:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[28]

---

[21] *Id.* ("[T]he first inquiry is whether the conduct at issue falls within the scope of the Second Amendment right," which is determined by looking to "whether the law harmonizes with the historical tradition associated with the Second Amendment guarantee.").
[22] *Id.* at 195.
[23] *Bruen* at 17-19.
[24] *NRA* at 195 ("If the law burdens conduct that falls within the Second Amendment's scope, we then proceed to apply the appropriate level of means-ends scrutiny.")
[25] *Bruen*, at 31, 69-70 (finding a New York law, which required applicants for public carry permits to demonstrate "proper-cause"—defined by New York authorities as a special need for self-protection distinguishable from that of the general community—before issuance of such permits, violates the constitutional rights of "citizens with ordinary self-defense needs from exercising their right to keep and bear arms.")
[26] *Bruen* at 17-19.
[27] *Bruen* at 31-32.
[28] *Bruen* at 17-18 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)); *see also Bruen* at 22-23.

Thus, if a challenged regulation prohibits conduct that is protected by the Second Amendment, courts must examine whether the regulation is consistent with the nation's historical tradition of firearm regulation. To accomplish this task, courts are to look to "relevantly similar" historical regulations for a "proper analogue."[29] There need only be "a well-established and representative historical *analogue*, not a historical *twin*."[30] Two of the metrics courts may use in determining whether regulations are relevantly similar are "how and why the regulations burden a law-abiding citizen's right to armed self-defense."[31]

*Bruen* warned that "not all history is created equal."[32] Because *Heller* determined the Second Amendment codified a pre-existing right "inherited from our English ancestors," both *Heller* and *Bruen* found "English history dating from the late 1600s, along with American colonial views leading up to the founding," to be of particular relevance.[33] *Bruen* additionally found historical tradition post-ratification through the early nineteenth century to be highly relevant to the extent it was not "*inconsistent* with the original meaning of the constitutional text."[34] Finally, while *Bruen* considered historical evidence from Reconstruction through the late nineteenth century, it emphasized evidence from that period was used "as mere confirmation" of the Court's earlier conclusions.[35] The Supreme Court acknowledged that this "historical analysis can be difficult," as it requires "resolving threshold questions, and making nuanced judgments about which evidence to consult and how to interpret it."[36] Accordingly, courts may choose and indeed

---

[29] *Bruen* at 27-28; *see also id.* at 29-30 (noting the absence of historical disputes regarding the lawfulness of a firearm prohibition may be evidence of constitutional permissibility).
[30] *Id.(emphasis in original)* ("So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.")
[31] *Id.*
[32] *Id.* at 34-35.
[33] *Id.* at 20 (quoting *Heller*, 554 U.S. at 599).
[34] *Id.* at 31, 36 (quoting *Heller v. D.C.*, 670 F.3d 1244, 1274 n.6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)).
[35] *Id.*
[36] *Id.* at 25 (alteration omitted) (quoting *McDonald*, 561 U.S. at 803–04 (Scalia, J., concurring)).

are "entitled to decide a case based on the historical record compiled by the parties," because "in our adversarial system of adjudication, we follow the principle of party presentation."[37]

The Supreme Court did not conduct an "exhaustive historical analysis . . . of the full scope of the Second Amendment" in *Heller* and *Bruen*. However, *Heller* did discuss, in dicta, some of its outer contours, including the constitutionality of laws barring the possession of firearms by felons:

> Like most rights, the right secured by the Second Amendment is not unlimited... Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions of the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.[38]

The Court explained that it identified this list of "presumptively lawful regulatory measures only as examples," and not as an exhaustive list.[39] Justice Alito's plurality opinion in *McDonald* reiterated the limits to the Second Amendment recognized in *Heller*:

> We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms.[40]

While the majority opinion in *Bruen* does not address this language from *Heller*, Justice Kavanaugh's concurrence—joined by Chief Justice Roberts—observes that the Second

---

[37] *Id.* at 25 n.6 (alteration omitted); *see also id.* at 60 ("Of course, we are not obligated to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.")
[38] *Heller*, 554 U.S. at 626-27 (internal citations omitted) (additionally noting the Second Amendment "does not extend to all types of weapons, but rather, only those typically possessed by law-abiding citizens for lawful purposes").
[39] *Id.* at 627 & 627 n.26 (noting that private ownership of military-style weapons and short-barreled shotguns had long been forbidden).
[40] *McDonald*, 561 U.S. at 786.

Amendment "is neither a regulatory straightjacket [sic] nor a regulatory blank check," and then quotes from *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons…."[41]

Based on the Supreme Court's Second Amendment trilogy, the Fifth Circuit now takes a two-step approach to the constitutionality of federal and state firearm regulations. The first step focusses on "whether the Second Amendment applies by its terms."[42] The second step focusses on "whether a given gun restriction is 'consistent with the nation's historical tradition of firearm regulation.'"[43] At this second stage, the government bears the burden of showing a historical tradition supporting the challenged regulation.[44] Many of the cases addressing the constitutionality of section 922(g)(1) focus on the first prong of the inquiry—in other words, the extent to which the Second Amendment applies to convicted felons. As explained by the Fifth Circuit, "the right to bear arms is held by 'the people.'"[45] Accordingly, whether the Second Amendment applies to a restricted group—such as convicted felons—turns on whether that group is part of "the people" referenced in the Second Amendment.

---

[41] *Bruen* at 80-81.
[42] *United States v. Daniels*, 77 F.4th 337, 341 (5th Cir. 2023).
[43] *Id.*
[44] *Id. Bruen* did not state which party bears the burden of showing the Second Amendment's plain text covers an individual's conduct, likely because that issue was not in dispute. *Bruen* at 31-32 ("It is undisputed that petitioners…—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."). However, it would seem that the challenger of a firearm restriction bears the initial burden of showing the challenged conduct is protected by the Second Amendment. *Bruen* instructed that once it is shown that the conduct is protected by the Second Amendment, the government bears the burden of justifying the regulation by showing it is consistent with the Nation's historical tradition of firearm regulations. It stated that this standard "accords with how we protect other constitutional rights," such as "the First Amendment, to which *Heller* repeatedly compared the right to keep and bear arms." *Id.* at 24. That same analogy would place the initial burden of showing the challenged conduct is covered by the Second Amendment on the challenger. *See e.g. Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984); *Voting for America, Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013).
[45] *Daniels.* at 342.

### C. Is 18 U.S.C. § 922(g)(1) Constitutional Under the Second Amendment Trilogy?

The Fifth Circuit has not expressly overruled the *Darrington* line of cases upholding the constitutionality of section 922(g)(1) following *Bruen*. In *United States v. Rahimi*,[46] a Fifth Circuit panel ruled that 18 U.S.C. § 922(g)(8), which prohibits anyone subject to a domestic violence restraining order from possessing a firearm, is unconstitutional under *Bruen*. Similarly, in *United States v. Daniels*,[47] the court ruled that 18 U.S.C. § 922(g)(3), which bars an individual from possessing a firearm if that person is an "unlawful user" of a controlled substance, was unconstitutional under *Bruen*. In contrast, the court affirmed the *Darrington* line of cases and decisions issued after *Heller* and *McDonald*.[48] The Fifth Circuit has not, however, expressly addressed the constitutionality of section 922(g)(1) after the Supreme Court decided *Bruen*.

A district court must apply circuit precedent unless that precedent has been overruled.[49] The Fifth Circuit's discussion of its "rule of orderliness" provides some guidance as to whether *Bruen* has overruled prior circuit precedent.[50] "It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court."[51] A Supreme Court decision may explicitly or implicitly overrule circuit precedent.[52] "Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law

---

[46] 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023).
[47] 77 F.4th 337.
[48] S*ee Anderson*, 559 F.3d at 352 ("But *Heller* provides no basis for reconsidering *Darrington*. We therefore reaffirm *Darrington* and the constitutionality of §922(g).") (citations omitted); *Powell*, 574 F. App'x at 397.
[49] *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3rd 425, 442 (5th Cir. 2000).
[50] *See United States v. Thompson*, No. CR 22-173, 2023 WL 3159617, at *4 (E.D. La. Apr. 27, 2023) (citing the rule of orderliness in ruling that *Bruen* does not overturn circuit precedent on the constitutionality of section 922(g)(1)); *United States v. Washington*, No. 23-82, 2023 WL 7170645 at *3 (W.D. La. Oct. 31, 2023) (same); *United States v. Jeffery*, No. 21-CR-437, 2023 WL 4629556 at *3 (W.D. Tex. July 19, 2023) (same); *United States v. Flores*, No. 18-CR-00064, 2023 WL 5282384, at *3 (W.D. Tex. Aug. 16, 2023), report and recommendation adopted, No. 18-CR-00064, 2023 WL 7190729 (W.D. Tex. Oct. 30, 2023) (same).
[51] *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).
[52] *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302–03 (5th Cir. 2018).

inconsistent with' that precedent."[53] It may also be implicitly overruled if "'an intervening Supreme Court decision fundamentally change[s] the focus' of the relevant analysis."[54] However, an intervening Supreme Court decision that "merely illuminates" prior precedent does not overrule that precedent.[55] For an intervening Supreme Court decision to disturb circuit precedent, the decision "must '*unequivocally*' overrule prior precedent."[56] Based on a careful review of the Supreme Court's Second Amendment trilogy, subsequent decisions issued by the Fifth Circuit, decisions issued by lower courts in the Fifth Circuit, and decisions from other jurisdictions addressing the constitutionality of section 922(g)(1), the Court concludes that *Bruen* did not unequivocally overrule Fifth Circuit precedent on the constitutionality of section 922(g)(1).

First, *Heller*, *McDonald*, and *Bruen* collectively establish a new framework for assessing the constitutionality of state and federal firearm regulations under the Second Amendment. In this sense, these cases "fundamentally change the focus" of how courts address Second Amendment challenges to these regulations. With respect to the constitutionality of the specific statute at issue here, the impact of this trilogy is less clear given the context of the Supreme Court's rulings—state, city and District of Columbia restrictions on gun ownership and concealed carry permit requirements for law-abiding citizens—and the limiting language used by the Court in explaining the contours of permissible firearm regulations. *Heller*, *McDonald*, and *Bruen* did not expressly address the constitutionality of section 922(g)(1) or, for that matter, any of the prohibitions in 18 U.S.C. § 922. With respect to a felon-in-possession prohibition, the majority opinion in *Heller* expressly states that the prohibition is valid under the Second Amendment.[57] In *McDonald*, Justice

---

[53] *Id.*
[54] *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 742 (5th Cir. 2018) (alteration in original) (quoting *Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 197 (5th Cir. 2016)).
[55] *Id.*
[56] *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (quoting *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001)) (emphasis added).
[57] *Heller*, 554 U.S. at 626-27.

Alito's majority opinion reiterated the language from *Heller* affirming the constitutionality of felon-in-possession restrictions, although this reference to *Heller* occurs in a portion of the opinion that garnered only a plurality of justices.[58] In *Bruen*, although the majority opinion does not address *Heller*'s discussion of felon-in-possession restrictions, it did not reject or qualify the statement in *Heller* that such restrictions are constitutional. Indeed, a concurrence by two members of the six-justice majority in *Bruen* reiterated the language from *Heller* affirming the constitutionality of these prohibitions.[59] Finally, as a number of lower courts have noted, the Court used the term "law-abiding" or "law-abiding and responsible citizens" in delineating the scope of the Second Amendment's protections. In *Daniels*, the Fifth Circuit noted that the Supreme Court used the term "law-abiding" fourteen times in *Bruen*, "including in the opening sentence, where it says that the Second Amendment 'protects the right of an ordinary, law-abiding citizen to possess a handgun.'"[60] This language suggests that citizens who are *not* "law-abiding"—i.e. convicted felons—can be constitutionally barred from possessing firearms. After considering the limiting language used by the Court in *Heller*, *McDonald*, and *Bruen* as to the validity of restrictions on the possession of firearms by convicted felons—and the different context in which these cases were decided—the Court cannot conclude that the Fifth Circuit's precedent on the constitutionality of section 922(g)(1) was "unequivocally overruled" in *Bruen*.

Turning to the Fifth Circuit's post-*Bruen* decisions, as the Court previously noted, the circuit has not addressed the validity of its *Darrington* line of cases in an *en banc* decision. Both *Rahimi* and *Daniels* invalidated different firearm restrictions contained in 18 U.S.C. § 922. In *Rahimi*, the panel's opinion emphasized that the defendant, who was barred from possessing a

---

[58] *McDonald*, 561 U.S. at 786.
[59] *Bruen* at 80-81.
[60] 77 F.4th at 342.

11

firearm under section 922(g)(8) because of a domestic violence protective order, did not fall within one of the "groups that have historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the Founders 'presumptively' tolerated or would have tolerated."[61] The panel further explained that *Heller*'s use of the term "law-abiding, responsible citizens" in defining the scope of the Second Amendment was "shorthand in explaining that its holding (that the amendment codifies an individual right to keep and bear arms) should not 'be taken to cast doubt on long-standing prohibitions on the possession of firearms by felons'…."[62] In the present case, the defendant *is* a convicted felon and, unlike the defendant in *Rahimi*, would fall within the "longstanding prohibition" on convicted felons possessing firearms.

In *Daniels*, the panel's opinion distinguishes the regulation involved in that case—the prohibition against the possession of a firearm by a person "who is an unlawful user of or addicted to any controlled substance"—from the prohibition applied to convicted felons.[63] The court explained that "[e]ven as a marijuana user, [defendant] is a member of our political community" and, accordingly, "has a presumptive right to bear arms."[64] The *Daniels* panel agreed with the *Rahimi* panel's conclusion that Bruen's use of the term "law-abiding citizen" was "shorthand" for the traditional exclusion of felons and the mentally ill from the protections of the Second Amendment, and concluded that Daniels, who was not a felon or mentally ill, was presumptively protected under the Second Amendment.[65] In contrast, here, Martin is subject to this "traditional exclusion" from the Second Amendment. Accordingly, based on the circuit's post-*Bruen*

---

[61] 61 F.4th 443, 452 (5th Cir. 2023) (citing *Heller*).
[62] *Id.*
[63] 77 F.4th at 342.
[64] *Id.*
[65] *Id.* at 343. The *Daniels* court noted that the reference to "law-abiding citizen" also "hints that Congress and state legislatures have greater latitude to limit the gun liberties of the lawless." *Id.*

12

decisions, the Court cannot conclude that *Bruen* unequivocally overruled the circuit's pre-*Bruen* caselaw on section 922(g)(1).

Post-*Bruen* decisions addressing the constitutionality of section 922(g)(1) from district courts in the Fifth Circuit, although not binding, are persuasive. The majority of the district courts addressing Fifth Circuit precedent in light of *Bruen* have upheld the constitutionality of section 922(g)(1).[66] Most of these courts have focused on the language used by the Supreme Court in *Heller* that its ruling does not abrogate the traditional exclusion of felons from the protection of the Second Amendment.[67] On the other hand, in *United States v. Bullock*,[68] the district court held that section 922(g)(1) is unconstitutional under *Bruen*. The *Bullock* court's application of *Bruen*'s framework and its analysis of the historical record is thorough and compelling. *Bullock* identifies and probes a number of weaknesses in the historical precedents repeatedly cited by the government in post-*Bruen* section 922(g)(1) cases.[69] The problem with *Bullock*'s approach is that it summarily concludes that *Bruen* "abrogated Fifth Circuit precedent" without addressing whether the *Darrington* line of cases was "unequivocally" overruled in light of the Fifth Circuit's post-*Heller* affirmance of *Darrington*'s holding and the statements in Fifth Circuit and Supreme Court decisions suggesting that firearm restrictions targeting convicted felons are constitutionally valid.

---

[66] *See, e.g., United States v. Washington*, No. 23-CR-82, 2023 WL 7170645 (W.D. La. Oct. 31, 2023); *United States v. Haynes*, No. 23-CR-71, 2023 WL 5673962 (W.D. La. Sept. 1, 2023); *United States v. Stewart,* No. 4:23-cr-105, 2023 WL 3313053 (N.D. Tex. May 8, 2023); *United States v. Thompson*, No. 2:22-cr-173, 2023 WL 3159617 (E.D. La. Apr. 27, 2023); *United States v. Mendez*, No. 2:22-cr-656, 2023 WL 3097243 (S.D. Tex. Apr. 26, 2023); *United States v. Barber*, No. 4:20-cr-384, 2023 WL 1073667 (E.D. Tex. Jan. 27, 2023); *Shipley v. Hijar*, No. 3:23-cv-11, 2023 WL 353994 (W.D. Tex. Jan. 20, 2023); *United States v. Jordan*, No. 3:22-cr-1140, 2023 WL 157789 (W.D. Tex. Jan. 11, 2023); *Davis v. United States*, Nos. 4:22-cv-1000, 4:19-cr-80, 2023 WL 129599 (N.D. Tex. Jan. 9, 2023); *United States v. Grinage*, No. 5:21-cr-399, 2022 WL 17420390 (W.D. Tex. Dec. 5, 2022); *United States v. Cage*, No. 3:21-cr-68, 2022 WL 17254319 (S.D. Miss. Nov. 28, 2022); *United States v. Hill*, No. 4:22-cr-249, 2022 WL 17069855 (S.D. Tex. Nov. 17, 2022); *United States v. Banuelos*, No. 3:22-cr-903, 2022 WL 17752205 (W.D. Tex. Nov. 10, 2022); *United States v. Charles*, No. 7:22-cr-154, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022); *United States v. Cockerham*, No. 5:21-cr-6, 2022 WL 4229314 (S.D. Miss. Sept. 13, 2022).
[67] *See, e.g., Washington*, No. 23-CR-82, 2023 WL 7170645 at *4.
[68] No. 18-CR-165, 2023 WL 4232309 (S.D. Miss. June 28, 2023).
[69] *Id*. at *21-32.

*Bullock* dismisses these statements as non-binding dicta.[70] While *Bullock* is correct that dicta is generally not legally binding, these statements are relevant to a district court attempting to determine whether an intervening decision from the Supreme Court unequivocally overrules otherwise binding circuit court precedent.[71] This Court agrees with the overwhelming majority of district courts in the Fifth Circuit that *Bruen* does not unequivocally overrule Fifth Circuit precedent on section 922(g)(1).

Finally, post-*Bruen* decisions from other circuits are in conflict as to whether section 922(g)(1) is unconstitutional under *Bruen*. In *Vincent v. Garland*,[72] the Tenth Circuit held that *Bruen* did not overrule the circuit's prior precedent upholding the constitutionality of section 922(g)(1). The court cited the Supreme Court's assurance that its holding in *Heller* was not intended to cast doubt on prohibitions against the possession of firearms by convicted felons.[73] The court also noted that, while *Bruen* did not explicitly address felon-in-possession restrictions, the Supreme Court approved the constitutionality of regulations requiring gun permit applicants to undergo a background check to ensure that the applicant is a "law-abiding, responsible citizen …."[74] According to the Tenth Circuit, this language "arguably implied that it was constitutional to deny firearm licenses to individuals with felony convictions."[75] In *United States v. Jackson*,[76] the Eighth Circuit similarly upheld the constitutionality of 922(g)(1), holding that "legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms," and that there was a historical tradition in disqualifying those convicted of a felony from

---

[70] *Id.* at *17-19.
[71] *See Washington*, No. 23-CR-82, 2023 WL 7170645 at *4 ("Thus, because *Bruen* is in fact, binding precedent, and even if this language is characterized as dicta, at a bare minimum, it is entitled to great weight.").
[72] 80 F.4th 1197 (10th Cir. 2023).
[73] *Id.* at 1199.
[74] *Id.* at 1202 (quoting *Bruen*, 142 S. Ct. at 2138 n. 9).
[75] *Id.*
[76] 69 F.4th 495, 505 (8th Cir. 2023).

14

possessing firearms. Like *Vincent*, the court cited the language from *Heller* with respect to felon-in-possession prohibitions and the Supreme Court's use of the term "law-abiding citizens" in explaining the scope of the Second Amendment.[77]

On the other hand, in *Range v. Attorney Gen.*,[78] the Third Circuit, sitting *en banc*, held that section 922(g)(1) is unconstitutional under *Bruen* as applied to the defendant in that case. The *Range* decision first addressed whether the defendant qualified as one of "the people" protected by the Second Amendment.[79] The court rejected the argument that "only 'law-abiding, responsible citizens' are protected by the Second Amendment."[80] The court then looked to historical firearm regulations—step two of the *Bruen* analysis—to determine whether the government "can strip [the defendant] of his right to keep and bear arms."[81] The court noted that the defendant in *Range* had been convicted of a non-violent felony—making a false statement to obtain food stamps in violation of Pennsylvania law.[82] The court concluded that the historical firearm regulations cited by the government did not support a lifetime ban with respect to the crime committed by the defendant in that case and, therefore, section 922(g)(1) was unconstitutional as applied to the defendant.[83] Accordingly, the precedent from other circuits is in conflict as to the constitutionality

---

[77] *Id.* at 503-505.
[78] 69 F.4th 96 (3d Cir. 2023) (*en banc*).
[79] *Id.* at 101.
[80] *Id.* at 103.
[81] *Id.*
[82] *Id.* at 98.
[83] *Id.* at 104-106. The *Range* court identified many of the same weaknesses in the government's historical precedents as the district court in *Bullock*. The *Range* court also makes a compelling case for "as applied" challenges to blanket firearm bans under section 922(g)(1) for non-violent felonies that do not implicate concerns over the danger posed to the community. Some courts and judges have questioned whether lifetime bans for non-violent or regulatory offenses are appropriate even if the offenses qualify as felonies. *See, e.g., id.* at 104-106 and 110 (Ambro, J.) (concurring); *United States v. Jackson*, 85 F.4th 468 (8th Cir. 2023) (Stras, J.) (dissenting from denial of rehearing *en banc*).; *Kanter v. Barr*, 919 F.3d 437, 457 (7th Cir. 2019) (Barrett, J.) (dissenting). However, the language used by the Supreme Court in its Second Amendment trilogy is unclear as to the whether there is any limit to the permissible contours of a felon-in-possession ban. In any event, this Court is bound by Fifth Circuit precedent and that precedent does not support an "as applied" challenge to section 922(g)(1).

of section 922(g)(1) and creates additional uncertainty as to whether *Bruen* unequivocally overrules Fifth Circuit precedent on section 922(g)(1).

*  *  *

In sum, the court cannot conclude that *Bruen* unequivocally overrules the Fifth Circuit's prior precedent upholding the constitutionality of section 922(g)(1). In contrast to the Third Circuit's decision in *Range*, the Fifth Circuit's post-*Bruen* decisions seems to indicate that the "law-abiding citizen" language used in the Supreme Court's Second Amendment trilogy authorizes categorical restrictions on the possession of firearms by persons convicted of felonies. Given these pronouncements and the weight of authority at the district court level upholding the constitutionality of section 922(g)(1), the court DENIES Martin's Motion to Dismiss.

IT IS SO ORDERED.

THUS DONE in Chambers on this 11th day of January, 2024.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE